*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID WATSON, ALICE WATSON, PHILIP
SUDNIK, LINDA SUDNIK, DEEBAR HOLDING,
LLC, and MARIANNE KERN,

UNPUBLISHED
July 10, 2026
10:07 AM

Plaintiffs-Appellees,

V

No. 371242
Sanilac Circuit Court
LC No. 2022-039688-CH

LAWRENCE O'KEEFE, JAN O'KEEFE, L&T
INVESTMENTS, LLC, and O'KEEFE
PROPERTIES, LLC,

Defendants-Appellants.

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

PER CURIAM.

In this property dispute, plaintiffs, David and Alice Watson, Philip and Linda Sudnik, Deebar Holding, LLC, and Marianne Kern, sought declaratory relief regarding their right to install a water pipe under a private road that runs through several parcels of property owned by different entities and individuals, and declaratory relief regarding their rights to access "the Beach" near their properties. Defendants, Lawrence and Jan O'Keefe, L&T Investments, LLC, and O'Keefe Properties, LLC, opposed plaintiffs' new construction to the extent that it interfered with the road on defendants' property and also disputed plaintiffs' right to access the Beach on their property. The trial court granted declaratory relief to plaintiffs ruling that they had the right to install the pipe as well as have access to the disputed area of the Beach. We reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This dispute involves parcels of land owned by both parties within a larger tract known as the Ballantrae Plat (the Plat), which was dedicated in 1925. Lake Huron adjoins the Plat to the west, and a public road, M-25, adjoins the Plat on the east. The Plat dedication provides that the "streets as shown on said Plat are hereby dedicated to the use of the public, and that the Beach is

-1-

dedicated to the sole and only use of the lot owners." However, the term "Beach" was neither defined in the Plat, nor indicated on the map of the Plat itself as "the Beach."



The parties own property within the Plat along a private access road commonly known as "Cottage Lane." Defendants own two parcels of land next to Lake Huron that comprise the entire length of the shoreline on the eastern end of Cottage Lane and a parcel of land at the intersection with M-25 on the western end of Cottage Lane. Plaintiffs own property along Cottage Lane to the north and south of the private access road and between the properties owned by defendants. Cottage Lane is comprised of two eight-foot easements extending north and south from the lots owned by the parties. The south eight-foot easement was memorialized in a "Driveway Easement" executed in 1980, while the north eight-foot easement was expressed in deed restrictions belonging to the parties.

Plaintiffs filed a complaint seeking declaratory judgment and injunctive relief alleging that defendants were interfering with their right to access and use "the Beach" as outlined in the Plat. The complaint alleged further that the common meaning of the term "Beach" as used in the Plat included an area east of defendants' lakefront properties and the water's edge. Plaintiffs sought an order confirming their right to use that area, as given in the Plat.

Plaintiffs also sought declaratory relief establishing that they had the right to install a pipe for water service to their residences along Cottage Lane. Plaintiffs argued that defendants had no right to object because defendants had authorized the installation of internet cables underneath Cottage Lane to serve their lakefront properties. Further, the amended complaint alleged that the parties' predecessors in title had entered into a "Water Use Agreement" that bound both plaintiffs' and defendants' properties. Plaintiffs alleged that the purpose of the Water Use Agreement obligated defendants to provide lot owners potable water until municipal water service became available, at which time the lot owners would avail themselves of public water services. Plaintiffs alleged that the Water Use Agreement was subsequently amended to obligate defendant L&T Investments, LLC, the predecessor in title to defendant O'Keefe Investments, LLC, to make improvements to the water system serving the parties in exchange for payment and a right of first refusal of the sale of the properties involved.[1]

---

[1] The amended complaint included counts related to the rights of first refusal of the parties. The trial court's determinations regarding these counts are not part of this appeal.

The trial court held a bench trial that included lengthy testimony from defendant Lawrence O'Keefe and John Milletics, a defense witness who was qualified as an expert in surveying. Milletics prepared a 2019 survey of defendants' lakefront properties (the Milletics survey), that was admitted by the trial court.

The trial court found that the Cottage Lane easements were originally granted for the purpose of ingress and egress. However, on the basis of defendant Lawrence O'Keefe's and plaintiff Philip Sudnik's testimonies, the trial court found that the scope of the Cottage Lane easements had been expanded "either by agreement or by acquiescence more than 37 years ago for the purpose of utilities." Both O'Keefe and Sudnik had testified that a natural gas line had been installed through the southern portion of the parties' parcels that crossed Cottage Lane. Sudnik testified that his property had been using natural gas since he purchased his lot 37 years ago. O'Keefe testified that defendants' lakefront properties were serviced by a main gas line that did not encroach on Cottage Lane; however, he also testified that plaintiffs' residences were served by "off-shoots" of the main line that crossed under Cottage Lane.

In light of this testimony, the trial court ruled that plaintiffs had the right to install water pipes along or under Cottage Lane to connect to the nearby municipal water system so long as they used the portion of the road for which they had an easement. The judgment following the trial court's oral findings stated that defendants also had easement rights to connect to municipal water services. However, the trial court stated that defendants had no right to object to the installation of water lines along Cottage Lane despite owning property that may be impacted by future water lines, explaining that defendants had waived any right to object because the O'Keefes had allowed internet cable to be dug under or along Cottage Lane.

With respect to the dispute regarding plaintiff's request for beach access, the trial court found that there was no "Beach" labeled on the Plat map. The trial court then defined "Beach" as "sand and pebbles along the shore," relying on a dictionary definition and an unpublished case. The trial court further found that the intention of the plat makers, who dedicated "the Beach" for the use of lot owners in the Plat and purposefully omitted any label for a beach on the Plat map, was to account for the "dynamic" nature of the location of the Lake Huron shoreline. The trial court acknowledged that the Milletics survey showed that defendants owned their properties to the water's edge. However, as indicated by the survey, the eastern boundary of the defendants' property was already west of the traverse line and ordinary high-water mark for Lake Huron. Milletics had previously testified that Lake Huron had moved westward because of erosion. So, on the basis of Milletics's testimony and survey, the trial court defined "the Beach" as the sand and pebble area between the water's edge and the vegetation or bluff that ran alongside defendants' properties. The trial court then ordered that plaintiffs had the right to use this area to access Lake Huron.

This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's holdings in equitable actions." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 117; 662 NW2d 387 (2003). "Following a bench trial, we review a trial court's factual findings for clear error and its conclusions of law

de novo." *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16; 840 NW2d 186 (2013). "The scope and extent of an easement is generally a question of fact that is reviewed for clear error on appeal." *Wiggins v City of Burton*, 291 Mich App 532, 550; 805 NW2d 517 (2011). "Similarly, whether the scope of an easement has been exceeded is generally a question of fact." *Id*. "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008) (quotation marks and citation omitted). We defer to the superior ability of the trial court to judge the credibility of the expert witnesses who appear before it. See *Dep't of Env't Quality v Gomez*, 318 Mich App 1, 37; 896 NW2d 39 (2016).

III. ANALYSIS

A. ACQUIESCENCE

Defendants' first argument on appeal is that the trial court erred by finding that the scope of the Cottage Lane easements had been expanded by acquiescence because natural gas lines had been installed on or around the areas subject to the easements. We agree.

The trial court did not clearly articulate whether it was applying the property doctrine of "acquiescence" or the equitable doctrine of "estoppel by acquiescence" to reach its decision regarding the scope of the Cottage Lane easements. "The doctrine of acquiescence provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). "The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes." *Id*.

However, this case involves the scope of an easement, not a boundary dispute. "An easement is, by nature, a limited property interest. It is a right to *use* the land burdened by the easement rather than a right to occupy and possess [the land] as does an estate owner." *Dep't of Nat Res v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378; 699 NW2d 272 (2005) (quotation marks and footnote omitted). The scope of an easement is a distinct issue from who owns the property, which is the primary issue in any boundary dispute. See *St Cecilia Soc v Universal Car & Service Co*, 213 Mich 569, 577; 182 NW 161 (1921), quoting 9 RCL, Easements, § 2 (" 'An easement has been defined as a liberty, privilege or advantage in land without profit, existing *distinct* from the ownership of the soil. It is a right which one person has to use the land of another for a specific purpose.' " (emphasis added)).

Furthermore, no specific claim of acquiescence was included in plaintiffs' amended complaint. "A trial court may decide an issue not raised in the parties' pleadings when the parties consent." *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 434; 997 NW2d 481 (2022), citing MCR 2.118(C)(1).[2] "But a trial court effectively sua sponte amends a complaint when it

---

[2] "When issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings. In that case, amendment of the

-4-

improperly exceeds the scope of the case by ruling on an issue that is not included in a claim." *Id*. (quotation marks, citation, and brackets omitted). The doctrine of acquiescence was not implicated by the allegations in plaintiffs' amended complaint because the issues raised, including utility installation on land subject to an easement, does not involve a boundary dispute. The trial court erred to the extent that it applied this doctrine to resolve the issue. See *id*. at 435-436.

We conclude that the trial court's findings with respect to acquiescence were erroneous. See *Scholma*, 303 Mich App at 16. Plaintiffs did not include a claim of acquiescence in their amended complaint, and the doctrine of acquiescence does not apply to the facts of this case. Therefore, the portions of the trial court's judgment purporting to decide the scope of the Cottage Lane easements on the basis of acquiescence are vacated as they exceeded the scope of the case. See *City of Bronson v American Ins Co*, 215 Mich App 612, 619; 546 NW2d 702 (1996).

## B. WAIVER

Defendants next argue that the trial court erred by finding that they had waived their right to object to the installation of utilities on or around Cottage Lane because they allowed internet cables to be installed to their lakefront properties through areas subject to the easement. They also argue that the Cottage Lane easements should be restricted to ingress-and-egress purposes only. We agree.

"An easement is the right to use the land of another for a specified purpose, and an easement may be created by express grant, by reservation or exception, or by covenant and agreement." *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 399; 964 NW2d 846 (2020) (quotation marks and citations omitted). "[T]he use of an easement must be confined strictly to the purposes for which it was granted or reserved." *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 41; 700 NW2d 364 (2005) (quotation marks and citation omitted). The "owner of the fee subject to an easement may rightfully use the land for any purpose not inconsistent with the easement owner's rights." *Bayberry Group*, 334 Mich App at 399 (quotation marks and citation omitted).

Importantly, "[o]nce granted, an easement cannot be modified by either party unilaterally." *Schadewald v Brule*, 225 Mich App 26, 36; 570 NW2d 788 (1997). "The owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Id*. "The language of the instrument that granted the easement determines the scope of the easement holder's rights." *Bayberry Group*, 334 Mich App at 399-400. "Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003).

---

pleadings to conform to the evidence and to raise those issues may be made on motion of a party at any time, even after judgment." MCR 2.118(C)(1). In this appeal, plaintiffs did not amend their complaint a second time to address the issue of acquiescence. Moreover, defendants did not consent to this issue as demonstrated by the fact that they argue the issue was never before the trial court in the first place.

In this case, the record reflected the existence of a "Driveway Easement," described as an "existing driveway over the North 8 feet [and] South 43 feet of Lot 12, Plat of Ballantrae, except the East 170 feet thereof. . . . " The Easement expressly stated that the "driveway presently existing over the property described above shall be an easement for ingress and egress to the various homes located on the parcel." This Easement also stated that the "easement shall run with the land and shall bind the heirs, successors and assigns of the parties to this agreement." At trial, O'Keefe testified that the area described in the Easement abutted the front of plaintiffs' properties.

The record includes multiple deeds and a mortgage survey report acknowledging the existence of the easement. A warranty deed conveying the O'Keefes' home indicated that the property included "an undivided one-half interest in the South 8 feet of the North 157 feet of said Lot Twelve (12) Plat of Ballantrae, subject to an easement, in all adjoining owners, of the said South 8 feet of said land for *highway purposes only*, in common with the owners of the fee. . . . " (emphasis added). A quit claim deed conveying several parcels from L&T Investments to O'Keefe Properties, LLC included a description of a "Parcel 7" and stated that the property was "[s]ubject to an easement in all adjoining owners of the South 8 feet of said land for *highway purposes only*." (emphasis added). The mortgage survey report identified "Parcel 7" as belonging to the Watsons.

Collectively, this evidence supports that ingress and egress were the sole contemplated purposes for the Cottage Lane easements when they were created. See *Bayberry Group*, 334 Mich App at 399-400; *Blackhawk Dev Corp*, 473 Mich at 46-47. There is no mention of the installation of utilities in any of these documents acknowledging the existence of the easement. The Water Use Agreement as amended does not discuss the installation of water lines on Cottage Lane. Nor does the Water Use Agreement incorporate the Driveway Easement or any of the parties' deeds.

The trial court made the specific finding that the Cottage Lane easements only authorized ingress-and-egress at the time of its creation, and that purpose should be enforced. See *Little*, 468 Mich at 700. This means that defendants may have acted beyond the scope of the easements by causing internet cable to run under or across Cottage Lane to their lakefront property because that usage exceeded the scope of the ingress-and-egress nature of the easements. See *Bayberry Group*, 334 Mich App at 399-400. But defendant's improper use did not unilaterally expand the scope of the easement. See *Schadewald*, 225 Mich App at 36.

Moreover, defendants' misuse of Cottage Lane did not extinguish their property rights and ability to object to uses beyond the intended scope of the easement. "An easement may be enforced at any time up to its extinguishment by adverse possession." *Beach v Lima Twp*, 283 Mich App 504, 514; 770 NW2d 386 (2009) (quotation marks, citations, and brackets omitted). Similarly, "[a]n easement cannot be abridged or taken away by the owner of the burdened land after it has been granted or otherwise established." *Minerva Partners, Ltd v First Passage, LLC*, 274 Mich App 207, 214; 731 NW2d 472 (2007). Easements "may be lost through abandonment." *Id*. But, neither adverse possession, nor abandonment are implicated in this case because the trial court found that all parties enjoyed equal rights to use Cottage Lane.

Accordingly, we conclude that the trial court's usage of waiver as a vehicle to nullify or extinguish defendant's specific right as an easement holder to object to the installation of municipal water lines was improper. "Michigan courts have defined 'waiver' as the voluntary and intentional relinquishment of a known right." *MacInnes v MacInnes*, 260 Mich App 280, 287; 677

NW2d 889 (2004). Equitable doctrines, including waiver, are generally inappropriate judicial means to extinguish easement rights. See, e.g., *Day v Walden*, 46 Mich 575, 584; 10 NW 26 (1881) (finding that a defendant's argument that estoppel should extinguish a plaintiff's easement was flawed because "we have held repeatedly that title to land cannot pass by estoppel. . . .").

The trial court erred by applying the doctrine of waiver to extinguish defendants' rights to object to the installation of municipal water lines along Cottage Lane because those rights still exist regardless of defendants' conduct. See *Beach*, 283 Mich App at 514. Therefore, the portions of the judgment relying on waiver to remove defendants' right as easement holders to object to activities that exceed the scope of the Cottage Lane easements are vacated. See *Bronson*, 215 Mich App at 619.

## C. DEFINITION OF "BEACH"

Defendants' final argument is that the trial court erred by using a definition of "Beach" that incorporated the dynamic nature of the Lake Huron shoreline, which included property located within their platted lot descriptions. Defendants argue that the trial court erred by granting plaintiffs the right to use the part of the Lake Huron beach that runs on or next to their properties as dedicated in the Plat. We disagree.

"[U]nder longstanding principles of Michigan's common law, the state, as sovereign, has an obligation to protect and preserve the waters of the Great Lakes and the lands beneath them for the public." *Glass v Goeckel*, 473 Mich 678-679; 703 NW2d 58 (2005). "The state serves, in effect, as the trustee of public rights in the Great Lakes for fishing, hunting, and boating for commerce or pleasure." *Id*.; MCL 324.32502. "Because the public trust doctrine preserves public rights separate from a landowner's fee title, the boundary of the public trust need not equate with a boundary of a landowner's littoral[3] title." *Id*. at 687-688. "Rather, a landowner's littoral title might extend past the boundary of the public trust." *Id*. at 688. Nevertheless, "the private title of littoral landowners remains subject to the public trust beneath the ordinary high water mark," and the "public trust doctrine permits pedestrian use-in and of itself-of our Great Lakes, up to, and including the land below the ordinary high water mark." *Id*. at 695-696.

"To interpret [a] plat correctly [the court] should place [itself] as nearly as possible in the position of the proprietor when he made it, and have its subdivisions before [the court] as they were before him at that time." *Quinnin v Reimers*, 46 Mich 605, 608; 10 NW 35 (1881). "The intent of the plattors should be determined with reference to the language used in connection with the facts and circumstances existing at the time of the grant." *Dobie v Morrison*, 227 Mich App 536, 540; 575 NW2d 817 (1998).

In this case, the Plat stated that "the Beach is dedicated to the sole and only use of the lot owners." The term was not defined in the Plat and there was no "Beach" identified on the

---

[3] " 'Littoral' refers to land along a lake or seashore, while 'riparian' properly refers only to land along rivers." *Burleson v Dep't of Environmental Quality*, 292 Mich App 544, 548 n 2; 808 NW2d 792 (2011). "Historically, however, the term 'riparian' has often been used to refer to both types of land." *Id*.

accompanying map. In construing the Plat, the trial court first found that "Beach" should be defined by using this Court's dictionary definition from *Sims Township v Arenac County Drain Commissioner*, unpublished per curiam opinion of the Court of Appeals, issued February 17, 2015 (Docket Nos. 318041, 318096), p 5.[4] That is, "a 'beach' is defined as 'an expanse of sand or pebbles along a shore.' " *Id*. We find no error with this definition as we have instructed that consulting a dictionary is necessary to determine "what these [undefined] terms commonly mean." *Bayberry Group*, 334 Mich App at 400.

The trial court next found that there was no "Beach" labeled in the Plat, and it stated that it was "fairly obvious that the beach is between Lake Huron and the traverse line for purposes of" the Plat. The trial court also found that there was a distinction in how the Plat specified that the streets included in the dedication were for "the use of the public" while "the Beach" was dedicated "to the sole and only use of the lot owners." On the basis of that distinction, the trial court determined that it was the plattors' intention to not define "the Beach" to account for the dynamic nature of the area.

This finding was supported by expert testimony given by Milletics as well as his survey of the area at issue. The trial court stated that the Milletics survey indicated that defendants "own [property] to the water's edge, which [was] already west of the traverse line." The trial court stated that Milletics had testified that "in fact it was likely that the bluff was where the traverse line was when the plat was done and the bluff [had], of course, moved west." Therefore, the trial court found that "the Beach" was "the sand and pebble area between the water's edge and the vegetation or bluff." And, the trial court ruled, plaintiffs had the "right to use the beach for purposes of the [Plat]," which was defined as "the sandy and pebbly area between the water's edge and the line of vegetation or the bluff, which ever [was] farther east."

This expert testimony supported the trial court's determination that "the Beach" should be defined as the "the sandy and pebbly area between the water's edge and the line of vegetation or the bluff, which ever [was] farther east." Milletics testified that "the Beach" was essentially moving westward because of the ongoing erosion to the shoreline adjacent to the O'Keefes' properties. He also testified that he had witnessed such erosion on plots next to Lake Huron specifically. We defer to the trial court's assessment and reliance on this expert testimony. See *Gomez*, 318 Mich App at 37.

Furthermore, the Plat map indicates the shoreline of Lake Huron through three distinct, wavy lines that can be reasonably understood as illustrations of water and the dynamic nature of the shoreline. Notably, the boundary lines of the lots where defendants' lakefront properties are situated mark boundaries westward of the shoreline as given in the Plat. According to the Milletics survey map, however, the Lake Huron shoreline is now eastward of those boundary lines as well as the ordinary high-water mark. On appeal, defendants maintain that they own the land to the shoreline and that the trial court erred by granting plaintiffs an easement to use that land to access

---

[4] Unpublished opinions have no binding authority but carry persuasive value. *Eddington v Torrez*, 311 Mich App 198, 203; 874 NW2d 394 (2015).

Lake Huron. Specifically, they maintain that there is no "Beach" that plaintiffs could use west of the eastern boundaries of their properties.

To enforce the boundaries of the Plat with the rigid definition of "the Beach" advanced by defendants would deprive plaintiffs access to parts of Lake Huron below the ordinary high-water mark that belongs to the State of Michigan for public enjoyment. See *Glass*, 473 Mich at 696.[5] Moreover, the trial court's findings regarding the plattors' intent were consistent with Milletics' testimony and a common-sense view of the Plat that included a view of the shoreline as being dynamic. See *Dobie*, 227 Mich App at 540; *Quinnin*, 46 Mich at 608. Therefore, the trial court did not clearly err by defining "the Beach" as the expanse of sand or pebbles along the shore of Lake Huron on or next to the O'Keefe properties. See *Jonkers*, 278 Mich App at 265. Similarly, the trial court did not err by finding that plaintiffs had the right to utilize the beach area adjacent to or on the O'Keefe's properties. See *id*.

Vacated in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[5] This Court has held that the regulatory authority of the State is not automatically equivalent to the scope of the public trust because it is limited to the listed elevations under MCL 324.32502 that establish the ordinary high-water mark for the Great Lakes. *Burleson v Dep't of Envtl Quality*, 292 Mich App 544, 553; 808 NW2d 792 (2011). The listed elevation establishing the ordinary high-water mark for Lake Huron is 579.8 feet of elevation above sea level. *Id*. at 549-550. Regardless, defendants maintain that they own and control the property to the platted line that extended past the ordinary high-water mark that conformed to the listed elevation for Lake Huron.